Williams, Judge,
delivered the opinion of the court:
Plaintiff, at the times here material, owned and operated, and now owns and operates, two lines or routes of railroad between Oregon and California points, including Portland and East Portland, Oregon, and San Francisco, California, both of which lines or routes are maintained and operated by plaintiff for the transportation of passenger, freight, and all classes of traffic.
The two routes or lines of railroads owned and operated by the plaintiff are designated in the record, respectively, *461 as the Siskiyou Route and the Cascade Route. The Sis-kiyou Route is 774.86 miles between Portland, Oregon, and San Francisco, California, and runs in a southerly direction from Portland to Springfield Junction, Oregon, a distance of 126.84 miles, 'thence from Springfield Junction, Oregon, via Drain, Roseburg, Grants Pass, Ashland, and Siskiyou, Oregon, to Black Butte, California, a distance of 300.42 miles, thence from Black Butte to Tehama, California, a distance of 131.99 miles, thence from Tehama to Roseville, California, a distance of 104.61 miles, thence from Roseville westerly to Davis, California, a distance of 31.10 miles, thence from Davis, California, via Suisun and Martinez, California, to San Francisco, California, a distance of 79.90 miles, making the total distance between Portland, Oregon, and San Francisco, California, 774.86 miles and between East Portland, Oregon, and San Francisco, California, 774.16 miles.
Congress granted lands in aid of the construction of 663.16 miles of the Siskiyou Route, that portion of the route between East Portland, Oregon, and Roseville, California. The other parts of the route were constructed without the aid of grants of land. The percentage of deduction, computed on the ratio of land-grant miles to the total miles included in the route is 42.792 percent between Portland, Oregon, and San Francisco, California, and 42.831 percent between East Portland and San Francisco.
The Cascade Route or line was completed by the plaintiff in 1926, and like the Siskiyou Route runs from Portland, Oregon, to San Francisco, California, a distance of 725.03 miles, and 724.33 miles between East Portland, Oregon, and San Francisco, California, there being .7 of a mile between Portland and East Portland, Oregon. The Cascade route or line includes 258.13 miles of the Siskiyou line, 126.14 miles between East Portland, Oregon, and Springfield Junction, Oregon, and 131.99 miles between Black Butte, California, and Tehama, California, being portions of that route which had been constructed by the aid of land grants. In other words the land-grant mileage of the Siskiyou line or route between East Portland and Springfield Junction, Oregon, and that part of the land-grant mileage between *462 Black Butte, California, and Tehama, California, are common to both the Cascade and the Siskiyou Routes. The .other parts of the Cascade Route or line were not constructed with the aid of land grants and are not land-grant lines. The percentage of deduction, computed on the ratio of land-grant miles to the total miles included in the Cascade Route is 17.801 percent between Portland, Oregon, and •San Francisco, California, and 17.819 percent between East Portland and San Francisco.
During December 1981 and January 1932, plaintiff transported certain property of the United States, on Government bills of lading, for the Quartermaster Corps, U. S. Army, War Department, and for the Department of Commerce, Bureau of Lighthouses, as follows:
(a) 2 carloads of bran from East Portland, Oregon, to San Francisco, California, on Government bills of lading WQ 278505, dated December 18, 1931, and WQ 278511, ■dated December 21, 1931, Southern Pacific Company Bill No. F 9824.
(b) 2 crates of derrick booms, with winches and attachment parts and counter weights, from East Portland, Oregon, to San Francisco, California, on Government bill of lading WQ 332281, dated December 19, 1931, Southern Pacific Company Bill No. F. 10026.
(c) 26 cylinders gas, H. P., pinch, steel (or iron), not plated, over 25 pounds pressure, under red label, from Portland, Oregon, to San Francisco, California, on Government bill of lading C 42376, dated January 20, 1932, Southern Pacific Company Bill No. F 10349.
(d) 26 cylinders gas, H. P., pinch, steel (or iron), not plated, 25 pounds or less pressure, under white label (empty) from San Francisco, California, to Portland, Oregon, on Government bill of lading C 42375, dated January 4, 1932, Southern Pacific Company Bill No. F 10350.
These five shipments were selected by the plaintiff as typical of numerous other shipments, set out in its petition, and are presented by plaintiff as sufficient to cover the entire matter at issue between the plaintiff and the defendant, and were selected by plaintiff for this purpose in order to shorten presentation of the issues to the court.
*463 The shipments were unrouted by the shipper representatives of the defendant as to any particular line of railroad of the plaintiff between East Portland or Portland, Oregon, and San Francisco, California, the points of origin and destination of the shipments. At the time of the movement of these shipments, there was not enough traffic to divide •over the two routes between Tehama, California, and San Francisco, California, and it was more economical to handle shipments through Roseville, California. These shipments were therefore transported via that part of the Cascade Route between Portland or East Portland, Oregon, and Tehama, California, and that part of the Siskiyou Route between Tehama, California, and San Francisco, California, via Roseville, Davis, and Suisun, the part of the route between Davis, California, and San Francisco, California, being also part of the Cascade Route.
From the time the Cascade Route was completed in 1926 to November 10, 1931, the rates in effect between Portland, Oregon, and San Francisco, California, were the same oyer both the Cascade and the Siskiyou Routes, and charges for services performed for the Government over either route were computed at tariff rates less land-grant deductions determined on the ratio of land-grant miles to the total miles included in the Siskiyou Route. In the meantime, for reasons stated in detail in the Findings, unnecessary to be restated here, plaintiff secured authority from the Interstate Commerce Commission to increase the existing rates (in some instances 100 percent) over the Siskiyou Route and reduce the rates over the Cascade Route. After this change in rates had become effective, on about 25 percent of the freight traffic transported by plaintiff on these routes the lawfully published and effective tariff rates by the Cascade Route Avere lower than via the Siskiyou Route, while on approximately 75 percent of the freight transported by plaintiff on the two routes the lawfully published and effective tariff rates were and are the same Ada both the Siskiyou and the Cascade Routes. The particular shipments in question came within the 25 percent on which the applicable rates via the Cascade Route were lower than the applicable *464 rates via the Siskiyou Route between the points of origin and destination of the shipments.
Plaintiff had notified the defendant of the proposed change in rates and that either route would be used for Government shipments, but that the lower rates less land-grant deductions for the land-grant mileage in. the Cascade Route would be available and make a net less charge to the Government than the use of the increased rates less land-grant deductions via the Siskiyou Route.
The plaintiff in its bill to the defendant assessed charges for the transportation of the shipments involved on the basis of the lowest published and effective rates applicable via the Cascade Route less land-grant deductions determined on the ratio the land-grant mileage of the Cascade Route bore to the total mileage of that route. The defendant through the General Accounting Office made settlement, as it had previously done since the completion of the Cascade Route, on the basis of the lowest published and effective tariff rates for such shipments applicable via the Cascade Route less land-grant deductions determined on the ratio of land-grant miles to the total miles in the Siskiyou Route.
This suit is for the recovery of the difference in charges claimed, computed at tariff rates applicable via the Cascade Route less land-grant deductions determined on the ratio of land-grant miles to the total miles in the Cascade Route, and the amount paid by the defendant at the same rates via the Cascade Route less land-grant deductions determined on the ratio of land-grant miles to the total miles in the Siskiyou Route.
The method of settlement with plaintiff used by the General Accounting Office in this case has been consistently and uniformly followed by the defendant’s accounting officers for more than fifty years in cases involving the same or similar questions. The principle was stated by the second Comptroller of the Treasury in a decision April 17,1888, as follows:
If a railroad have a line between two points, aided in whole or in part, and subsequently acquire a new *465 line or lines nonaided between those same points, the accounts for Government transportation, when performed over the new line or lines, shall be stated in the same proportion of aided to nonaided as though the transportation were over the original line.
This rule as stated has been uniformly observed in the settlement of accounts for government transportation of property and troops of the United States, and has been applied in settlement of accounts for transportation rendered the Government where through service has been rendered by a shorter line substituted in whole or in part for the longer aided and original line. (See stipulations of the parties in United States v. Northern Pacific Railroad Co., 30 Fed. (2d) 655.) This long established rule has been acquiesced in by land-grant railroads generally and was acquiesced in by this plaintiff during the period between the completion of its Cascade line in 1926 to 1931 when its accounts against the Government for the transportation of Government property were settled in this manner. It was not until the shipments involved in this suit were moved that plaintiff made protest against the position of the Government. We do not regard the fact the rates between San Francisco and Portland were the same over both routes between 1926 and 1931 as material or altering in any way the principle involved.
While this administrative construction is not binding on the plaintiff or the court, and it is the duty of the court to determine the rights and obligations of both the plaintiff and the Government by the provisions of the Act of Congress making the grant of lands, yet the rule of law is well established in decisions too numerous for citation here that the contemporaneous construction of a statute by those charged with its execution, especially when it has long prevailed, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous. The rule is fortified when the administrative construction has been acquiesced in for a like period by the adverse or opposite party as the land-grant railroads have done in this case.
*466 The method of settlement used by the Comptroller General in this case was approved in United States v. Northern Pacific Railway Co., supra. The plaintiff in that case owned and operated a through line of railroad between St. Paul, Minnesota, and Seattle, Washington, which has been constructed by the aid of Federal land grants. Subsequent to the construction of the road plantiff built certain cut-offs without the aid of land grants which straightened and shortened the length of the road. Through traffic was routed over the line thus straightened and shortened. The Government in making settlement with the railroad company for certain transportation made land-grant deductions on the basis of the original land-grant mileage. The railroad company contended that the land-grant deductions should be based on the original land-grant mileage less the non-land-grant mileage of the cut-off sections. The court sustained the method of settlement made by the Government and allowed the land-grant deductions on the basis of the original land-grant mileage. The court said:
For its own convenience in competition with other roads, and perhaps for other reasons, it has shortened its line by 47.64 miles and over the line thus shortened or straightened it routes all its through traffic. *****
The amount at stake in the case at bar is inconsiderable, but the principle involved is far-reaching in its potential consequences. If the slight deviations from the recognized land-grant route, brought about by these cut-offs, be accepted as the establishment of a new route, partially absolved from land-grant reductions in fares, it would be easy, under the rule thus laid down, by degrees to whittle away the reserved rights of the Government.
One of the undoubted purposes of the plaintiff in the construction of the Cascade Route was the establishment of an alternate line between San Francisco and Portland over which through traffic could be handled more expeditiously and economically than over its existing Siskiyou Route. It was obviously plaintiff’s intention to use the new segments or cut-offs between Springfield Junction and Black Butte via Klamath Falls, and between Tehama, California, and *467 San Francisco via Davis, for through traffic in lieu of the land grant parts of the Siskiyou Boute between Portland and San Francisco which lie between Black Butte and Eugene, Oregon, via Ashland, and between Tehama and Boseville, practically abandoning through traffic thereon, and that is exactly what happened. When plaintiff for economical reasons issued instructions, as shown in Finding 15, to route all through shipments moving between San Francisco and Portland over the Cascade Boute between Eugene and Black Butte via Klamath Falls, and between Tehama and San Francisco via Davis, 1,275,000 tons of southbound traffic and 250,000 tons of northbound traffic a year were diverted from the Siskiyou Boute to the Cascade Boute. While the land-grant portions of the Siskiyou Boute between Springfield Junction and Black Butte via Ashland, and between Tehama and Boseville, have not been abandoned by the plaintiff and have been kept in good repair and are open for through, traffic between San Francisco and Portland, the practical effect of the tariff provisions restricting the application of the lower scale of rates via the Cascade Boute is to force shippers, including the United States, to use the Cascade Boute except in unusual and rare instances. There could be no inducement to a shipper to use the route via the old land-grant line in view of excessive rates and plaintiff’s general routing practice in operating its manifest or through train service over the Cascade Boute with only local train service scheduled and operating over the Siskiyou Boute.
Plaintiff in our opinion may not deprive the Government of its lawful land-grant deductions from charges for transportation for through shipments between San Francisco and Portland accruing to it on account of land grants made in the construction of its Siskiyou line by routing the shipments over new segments or cut-offs connecting with that line, constructed without the aid of land grants. If it is permitted to do that it may continue to construct new segments without the aid of land grants until an entirely new line constructed without any aid of land grants parallels the Siskiyou line from San Francisco to Portland, thus depriving the Government of its entire land-grant deductions *468 for services that should be furnished between San Francisco and Portland over the old route.
For the reasons stated we think the method used by the General Accounting Office in making payment to plaintiff for its services in transporting the shipments in question was correct and proper and that plaintiff has been paid all that it is entitled to receive. In any event we are not prepared to overturn the long established administrative method used in making like settlements with land-grant railroads.
Plaintiff is not entitled to recover and the petition is dismissed. It is so ordered.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.